# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |
|---|---|
| IN RE KBR, INC. SECURITIES LITIGATION | Case No. 4:14-CV-01287<br>Judge Lee H. Rosenthal |

## CLASS COUNSEL'S MOTION FOR AN AWARD OF
## ATTORNEYS' FEES AND PAYMENT OF LITIGATION EXPENSES

**LABATON SUCHAROW LLP**

Louis Gottlieb (*pro hac vice*)
140 Broadway
New York, NY 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
Email: lgottlieb@labaton.com

**BERNSTEIN LITOWITZ BERGER
 & GROSSMANN LLP**

John Rizio-Hamilton (*pro hac vice*)
1251 Avenue of the Americas
New York, NY 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444
Email: johnr@blbglaw.com

*Class Counsel for Class Representatives and the Class*

Dated: June 20, 2017

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ...................................................................................1

SUMMARY OF THE ARGUMENT ............................................................................1

ARGUMENT .................................................................................................................5

I.   CLASS COUNSEL ARE ENTITLED TO AN AWARD OF ATTORNEYS'
     FEES FROM THE COMMON FUND...................................................................5

II.  THE REQUESTED ATTORNEYS' FEES ARE REASONABLE UNDER
     EITHER THE PERCENTAGE-OF-THE-FUND METHOD OR THE
     LODESTAR METHOD.........................................................................................6

     A.   The Requested Attorneys' Fees Are Reasonable Under the Percentage-of-
          the-Fund Method.........................................................................................7

     B.   The Requested Attorneys' Fees Are Reasonable Under the Lodestar
          Method ........................................................................................................9

III. OTHER FACTORS CONSIDERED BY COURTS IN THE FIFTH CIRCUIT
     CONFIRM THAT THE REQUESTED FEE IS FAIR AND REASONABLE................11

     A.   The *Johnson* Factors Confirm that the Requested Fee Is Fair and
          Reasonable ................................................................................................12

          1.   The Time and Labor Required................................................................12

          2.   The Novelty and Difficulty of the Issues...................................................13

          3.   The Skill Required to Perform the Legal Services Properly, and the
               Experience, Reputation and Ability of the Attorneys................................16

          4.   The Preclusion of Other Employment .......................................................17

          5.   The Customary Fee and Awards in Similar Cases.....................................17

          6.   The Contingent Nature of the Fee............................................................17

          7.   The Amount Involved and the Results Achieved ......................................18

          8.   The Undesirability of the Case .................................................................19

B.     Other Factors Considered by the Courts Further Support the Requested Fee as Fair and Reasonable ......................................................................................19

     1.     Public Policy Considerations Support the Requested Fee .........................19

     2.     The Requested Fee Has Been Approved by the Class Representatives ...........................................................................................20

     3.     The Reaction of the Class to Date Supports the Requested Fee ................21

IV.     THE REQUESTED EXPENSES ARE REASONABLE AND WERE NECESSARY TO ACHIEVE THE BENEFIT OBTAINED...........................................21

V.     CLASS REPRESENTATIVES SHOULD BE AWARDED THEIR REASONABLE COSTS AND EXPENSES UNDER 15 U.S.C. §78-u-4(a)(4)...............23

CONCLUSION ....................................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Anadarko Petroleum Corp. Class Action Litig.*,
No. 4:12-CV-00900, 2014 WL 12599393 (S.D. Tex. Sept. 11, 2014) ....................................8

*Barton v. Drummond Co.*,
636 F.2d 978 (5th Cir. 1981) ...................................................5

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
472 U.S. 299 (1985)...........................................................6, 19

*Billitteri v. Sec. Am., Inc.*,
No. 3:09-cv-01568-F, 2011 WL 3585983 (N.D. Tex. Aug. 4, 2011)............................ *passim*

*Blum v. Stenson*,
465 U.S. 886 (1984)...................................................................7

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980)...................................................................5

*Braud v. Transport Serv. Co. of Ill.*,
No. 05-1898, 2010 WL 3283398 (E.D. La. Aug. 17, 2010) ...................................19

*Burford v. Cargill, Inc.*,
No. 05-0283, 2012 WL 5471985 (W.D. La. Nov. 8, 2012)...................................8, 17

*Camden I Condo. Ass'n v. Dunkle*,
946 F.2d 768 (11th Cir. 1991) ....................................................19

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974)...........................................................17

*City of Pontiac Gen. Emps.'Ret. Sys. v. Lockheed Martin Corp.*,
954 F. Supp. 2d 276 (S.D.N.Y. 2013).............................................8

*City of Providence v. Aeropostale, Inc.*,
No. 11 Civ. 7132, 2014 WL 1883494 (S.D.N.Y. May 9, 2014), *aff'd sub nom.*
*Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015)...........................................8

*DeHoyos v. Allstate Corp.*,
240 F.R.D. 269 (W.D. Tex. 2007) ..............................................10, 16

iii

*Di Giacomo v. Plains All Am. Pipeline*,
    No. Civ. A. H-99-4137, 2001 WL 34633373 (S.D. Tex. Dec. 19, 2001)................................8

*In re Enron Corp. Sec., Derivative & ERISA Litig.*,
    586 F. Supp. 2d 732 (S.D. Tex. 2008) ..................................................................10

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
    No. 02-CV-3400 (CM)(PED), 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010)...............6, 10, 20

*In re Friedman's, Inc. Sec. Litig.*,
    No. 1:03-cv-3475, 2009 WL 1456698 (N.D. Ga. May 22, 2009) ...........................................8

*In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*,
    851 F. Supp. 2d 1040 (S.D. Tex. 2012) ................................................................11

*Hicks v. Morgan Stanley*,
    No. 01 Civ. 10071(RJH), 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005)..................................6

*Jenkins v. Trustmark Nat'l Bank*,
    300 F.R.D. 291 (S.D. Miss. 2014) ..................................................................5, 7, 20

*Johnson v. Georgia Highway Express, Inc.*,
    488 F.2d 714 (5th Cir. 1974) ....................................................... *passim*

*Klein v. O'Neal, Inc.*,
    705 F. Supp. 2d 632 (N.D. Tex. 2010) ....................................................... *passim*

*Leroy v. City of Houston*,
    831 F.2d 576 (5th Cir. 1987) ..................................................................10

*In re Lucent Techs., Inc. Sec. Litig.*,
    327 F. Supp. 2d 426 (D.N.J. 2004) ..................................................................21

*In re Marsh & McLennan Co. Sec. Litig.*,
    No. 04 Civ. 8144 (CM), 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009)................................24

*Missouri v. Jenkins*,
    491 U.S. 274 (1989)..................................................................10

*In re OCA, Inc. Sec. & Derivative Litig.*,
    No. 05-2165, 2009 WL 512081 (E.D. La. Mar. 2, 2009) .........................................7, 8, 13, 18

*Roussel v. Brinker Int'l, Inc.*,
    No. H-05-3733, 2010 WL 1881898 (S.D. Tex. Jan. 13, 2010), *aff'd*, 441 F.
    App'x 222 (5th Cir. 2011) ..................................................................18

iv

*Schwartz v. TXU Corp.*,
No. 3:02-CV-2243-K, 2005 WL 3148350 (N.D. Tex. Nov. 8, 2005) ..........................7, 12, 16

*Shaw v. Toshiba Am. Info. Sys., Inc.*,
91 F. Supp. 2d 942 (E.D. Tex. 2000) ...............................................................................7, 17

*Stahl v. MasTec, Inc.*,
No. 8:05-CV-1265, 2008 WL 2267469 (M.D. Fla. May 20, 2008)..........................................9

*Taft v. Ackermans*,
No. 02 Civ. 7951, 2007 WL 414493 (S.D.N.Y. Jan. 31, 2007).................................................8

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007)..........................................................................................................6, 19

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*,
669 F.3d 632 (5th Cir. 2012) ........................................................................ *passim*

*In re Veeco Instruments Inc. Sec. Litig.*,
No. 05 MDL 01695(CM), 2007 WL 4115808 (S.D.N.Y. Nov. 7, 2007) ...............................20

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
396 F.3d 96 (2d Cir. 2005).....................................................................................................7

*In re Seitel, Inc. Sec. Litig.*,
No. 02-1566 (S.D. Tex. July 29, 2005).................................................................................24

*Simons v. Dynacq Healthcare, Inc.*,
No. H-03-5825 (S.D. Tex. Jan. 10, 2007)............................................................................24

*In re Tetra Techs., Inc. Sec. Litig.*,
No. 4:08-CV-00965 (S.D. Tex. Sept. 29, 2010) ..................................................................24

**Statutes**

15 U.S.C. §78-U-4(A)(4) ......................................................................................................23

15 U.S.C. §78u-4(a)(4) .........................................................................................................23

**Other Authorities**

H.R. Conf. Rep. No. 104-369 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730 (1995)....................20

MANUAL FOR COMPLEX LITIGATION, FOURTH, § 14.121 (2004) ......................................................7

## PRELIMINARY STATEMENT

Court-appointed Co-Lead Counsel, Bernstein Litowitz Berger & Grossmann LLP ("BLBG") and Labaton Sucharow LLP ("Labaton") (together, "Class Counsel"), having achieved a Settlement of $10.5 million for the benefit of the certified Class in this securities class action, respectfully move for an award of attorneys' fees in the amount of 25% of the Settlement Fund, or $2,625,000 plus interest at the same rate as earned by the Settlement Fund.[1]  Class Counsel also seek payment of: (i) $816,260.97 in litigation expenses, and (ii) $7,113.64 in costs and expenses incurred by Class Representatives directly related to their representation of the Class, as authorized by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"). Class Counsel respectfully request that 50% of the attorneys' fees awarded and 100% of the approved expenses be payable immediately upon the Court's approval of the fees and expenses, with the balance of the attorneys' fees to be payable when settlement distribution checks have been mailed to Authorized Claimants.

## SUMMARY OF THE ARGUMENT

Plaintiffs' Counsel[2] vigorously litigated this case for nearly three years on an entirely contingent basis against a tenacious and well-respected law firm. The $10.5 million proposed Settlement, if approved by the Court, represents a favorable outcome for the Class.  The

---

[1] Unless otherwise defined herein, capitalized terms shall have the meanings ascribed to them in the Stipulation and Agreement of Settlement, dated as of April 5, 2017 (ECF No. 134-2) (the "Stipulation") or in the Joint Declaration of Louis Gottlieb and John Rizio-Hamilton in Support of (I) Class Representatives' Motion for Final Approval of Class Action Settlement and Plan of Allocation and (II) Class Counsel's Motion for an Award of Attorneys' Fees and Payment of Litigation Expenses (the "Joint Declaration" or "Joint Decl."), filed herewith. Citations to "¶" in this motion refer to paragraphs in the Joint Declaration.

[2] Plaintiffs' Counsel consist of Class Counsel and Liaison Counsel, Ajamie LLP.

Settlement is particularly beneficial in light of the significant litigation risks present in this case. As discussed below, Defendants advanced powerful defenses to Class Representatives' claims and there was considerable uncertainty throughout the case as to whether the Class Representatives would be able to obtain any recovery.  Class Counsel respectfully submit that, for the reasons discussed herein, Plaintiffs' Counsel should be awarded the requested attorneys' fees and litigation expenses.  A court's award of attorneys' fees and expenses in connection with a class settlement is reviewed for abuse of discretion.  *Union Asset Mgm't Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 638 (5th Cir. 2012).

As detailed in the accompanying Joint Declaration,[3] to achieve the recovery here, Class Counsel devoted substantial resources to pursuing this litigation by, among other things, (i) conducting a thorough and wide-ranging factual investigation concerning the allegedly fraudulent misrepresentations made by Defendants, which included a careful review of publicly available information concerning the Company's May 30, 2014 restatement of its financial results (the "Restatement") and interviews with 45 individuals who were either former KBR employees or other persons with relevant knowledge concerning the Restatement; (ii) preparing and filing a detailed Complaint; (iii) successfully opposing Defendants' motion to dismiss the Complaint; (iv) participating in oral argument on Defendants' motion to dismiss; (v) successfully moving for class certification; (vi) engaging in extensive fact discovery, which included Class

---

[3] The Joint Declaration is an integral part of this submission and, for the sake of brevity, the Court is respectfully referred to it for a detailed description of, among other things: the history of the Action (¶¶ 10-34); the nature of the claims asserted (¶¶ 7-9); the negotiations leading to the Settlement (¶¶ 55-56); the risks and uncertainties of continued litigation (¶¶ 64-85); and a description of the services Class Counsel provided for the benefit of the Class (¶¶ 13-14, 24, 29-31, 33, 35-54).

2

Counsel's analysis of approximately 1.3 million pages of documents produced by Defendants and approximately 78,000 pages of documents produced by non-party KPMG; (vii) taking or defending 10 depositions (including taking 3 depositions in Canada pursuant to letters rogatory); (viii) conferring with experts on accounting, damages and loss causation issues, as well as industry experts on issues pertaining to pipe fabrication and modular assembly; and (ix) engaging in an extensive mediation process with former Judge Daniel Weinstein and Jed Melnick, including preparing detailed mediation briefs, attending a full-day mediation, and engaging in lengthy follow-up negotiations. *See* ¶¶ 13-57.

Class Counsel undertook these substantial efforts and achieved the proposed Settlement in the face of daunting litigation risks.  For example, as explained in detail in the Joint Declaration at ¶¶ 65-85 and summarized below, the Class Representatives faced substantial challenges in establishing Defendants' liability, in particular whether Defendants' acted with scienter.  Among other things, Defendants had strong arguments that: (i) KBR's Restatement was not the result of intentional behavior designed to mislead investors, but was the result of misjudgments made in the complex cost forecasting process for the Contracts at issue, which by their nature required subjective predictions and were subject to change; (ii) there was no evidence that any of the Individual Defendants knew that KBR's financial statements were incorrect when issued because the Contracts were accounted for and performed in a remote subsidiary in Alberta, Canada, and none of the Individual Defendants was responsible for preparing or reviewing the cost estimates at the core of this case; and (iii) Defendants' conduct in response to their becoming aware of a potential error in the cost forecasts—which included an immediate internal investigation of the problem, the hiring of independent legal counsel and

accounting advisors to assist in that investigation, swift public disclosure of the problem, and the voluntarily restatement of the erroneous financial statements—demonstrated good faith, not fraudulent intent.  Further, even if the Class Representatives were successful in establishing liability, they faced several substantial risks in proving damages based on Defendants' claim that there were no recoverable damages on three of the four alleged corrective disclosures in the case.

In light of these obstacles, the immediate $10.5 million cash recovery is a favorable result that constitutes a significant portion of recoverable damages.  ¶ 84.  As compensation for their efforts on behalf of the Class, Class Counsel request a fee award in the amount of 25% of the Settlement Fund and payment of litigation expenses in the amount of $816,260.97.  As discussed below, the requested fee is well within the range of fees awarded in comparable class action settlements, whether considered as a percentage of the Settlement or on a lodestar/multiplier basis.  Also, as discussed below, the requested fee represents a fractional or "negative" multiplier of approximately 0.29 on Plaintiffs' Counsel's total lodestar (*i.e.*, less than the value of the time incurred by Plaintiffs' Counsel in this litigation).

Class Representatives, which are both sophisticated institutional investors, have endorsed the requested fees and expenses as fair and reasonable.  *See* Declaration of Gail Stone, Executive Director of the Arkansas Public Employees Retirement System ("APERS") (the "Stone Decl."), attached to the Joint Decl. as Exhibit 1, at ¶¶ 7-8; Declaration of E. Craig Young, on behalf of IBEW Local No. 58 / SMC NECA Funds (the "Young Decl."), attached to the Joint Decl. as Exhibit 2, at ¶¶ 7-8.

The reaction of the Class to date further supports the request.  Pursuant to the Court's Preliminary Approval Order (ECF No. 141), more than 58,000 copies of the Notice have been

mailed to potential Class Members and nominees, and the Summary Notice was published in the *Wall Street Journal* and transmitted over the *PR Newswire*.[4]  The Notice advised potential Class Members that Class Counsel would seek fees up to 25% of the Settlement Fund and payment of litigation expenses in an amount not to exceed $995,000.  *See* Mailing Decl., Exhibit A.  While the deadline for Class Members to object to the requested attorneys' fees and expenses has not yet passed, to date, no objections to the attorneys' fees or expenses set forth in the Notice have been received.

For all the reasons set forth below, Class Counsel respectfully request that the Court approve their application for an award of attorneys' fees and expenses.

## ARGUMENT

## I.  CLASS COUNSEL ARE ENTITLED TO AN AWARD OF ATTORNEYS' FEES FROM THE COMMON FUND

The Supreme Court and the Fifth Circuit have long recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole."  *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see also Barton v. Drummond Co.*, 636 F.2d 978, 982 (5th Cir. 1981).  Courts recognize that awards of fair attorneys' fees from a common fund serve the "twin goals of removing a potential financial obstacle to a plaintiff's pursuit of a claim on behalf of a class and of equitably distributing the fees and costs of successful litigation among all who gained from the named plaintiff's efforts." *Jenkins v. Trustmark Nat'l Bank*, 300 F.R.D. 291, 306 (S.D. Miss.

---

[4] *See* Declaration of Stephanie A. Thurin Regarding: (A) Mailing of the Notice and Proof of Claim Form; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion Received to Date (the "Mailing Decl."), attached as Exhibit 3 to the Joint Decl., at ¶¶ 2-9.

2014) (citation omitted); *see also In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02-CV-3400 (CM)(PED), 2010 WL 4537550, at *23 (S.D.N.Y. Nov. 8, 2010) (awards to counsel from a common fund "encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons, and to discourage future misconduct of a similar nature").

The Supreme Court has also emphasized that private securities actions, like this Action, are "an essential supplement to criminal prosecutions and civil enforcement actions" brought by the SEC. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007); *accord Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985) (private securities actions provide "'a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [SEC] action.'") (citation omitted). Compensating plaintiffs' counsel for the risks they take in bringing these actions is essential, because "[s]uch actions could not be sustained if plaintiffs' counsel were not to receive remuneration from the settlement fund for their efforts on behalf of the class." *Hicks v. Morgan Stanley*, No. 01 Civ. 10071(RJH), 2005 WL 2757792, at *9 (S.D.N.Y. Oct. 24, 2005).

## II. THE REQUESTED ATTORNEYS' FEES ARE REASONABLE UNDER EITHER THE PERCENTAGE-OF-THE-FUND METHOD OR THE LODESTAR METHOD

Fees awarded to counsel from a common fund can be determined under either the percentage-of-the-fund method or the lodestar method. *See Dell,* 669 F.3d at 644 (district courts have "the flexibility to choose between the percentage and lodestar methods in common fund cases"). Under either method, the requested fee in this Action is fair and reasonable.

A.    The Requested Attorneys' Fees Are
      **Reasonable Under the Percentage-of-the-Fund Method**

The Supreme Court has endorsed the percentage method, stating that "under the 'common fund doctrine'. . . a reasonable fee is based on a percentage of the fund bestowed on the class." *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984).  The Fifth Circuit has also approved of the percentage method, noting that it "brings certain advantages . . . because it allows for easy computation" and "aligns the interests of class counsel with those of the class members."  *Dell*, 669 F.3d at 643 ("district courts in this Circuit regularly use the percentage method"); *see also Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005) (the percentage method "directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation").

The requested fee of 25% is well within the range of percentage fees awarded in the Fifth Circuit in comparable cases.  *See Schwartz v. TXU Corp.*, No. 3:02-CV-2243-K, 2005 WL 3148350, at *27 (N.D. Tex. Nov. 8, 2005) ("courts throughout this Circuit regularly award fees of 25% and more often 30% or more of the total recovery under the percentage-of-the recovery method"); *Shaw v. Toshiba Am. Info. Sys., Inc.*, 91 F. Supp. 2d 942, 972 (E.D. Tex. 2000) ("based on the opinions of other courts and the available studies of class action attorneys' fees awards . . . this Court concludes that attorneys' fees in the range from twenty-five percent (25%) to [33%] have been routinely awarded in class actions"); *Jenkins*, 300 F.R.D. at 307 ("it is not unusual for district courts in the Fifth Circuit to award percentages of approximately one third") (citation omitted); *In re OCA, Inc. Sec. & Derivative Litig.*, No. 05-2165, 2009 WL 512081, at *19 (E.D. La. Mar. 2, 2009) ("In securities suits, common fee awards generally fall within the 20 to 33 per cent range"); MANUAL FOR COMPLEX LITIGATION, FOURTH, § 14.121, at 188 (2004)

(noting that "[a]ttorney fees awarded under the percentage method are often between 25% and 30% of the fund").

A review of attorneys' fees awarded in class actions with comparably sized settlements in this Circuit strongly supports the reasonableness of the 25% fee request.  *See In re Anadarko Petroleum Corp. Class Action Litig.*, No. 4:12-CV-00900, 2014 WL 12599393, at *1 (S.D. Tex. Sept. 11, 2014) (awarding 25% of $12,500,000 settlement fund with 1.01 multiplier); *Burford v. Cargill, Inc.*, No. 05-0283, 2012 WL 5471985, at *6 (W.D. La. Nov. 8, 2012) (awarding 33.3% of $27.5 million settlement fund with 1.78 multiplier); *OCA*, 2009 WL 512081, at *25 (awarding 28.5% of $6.5 million common fund with a 1.6 multiplier); *Di Giacomo v. Plains All Am. Pipeline*, No. Civ. A. H-99-4137, 2001 WL 34633373, at *8-11 (S.D. Tex. Dec. 19, 2001) (awarding 30% of $24.1 million common fund with a 5.3 multiplier).  Indeed, fee awards of 25% or more are often made in considerably larger settlements as well.  *See, e.g.*, *Billitteri v. Sec. Am., Inc.*, No. 3:09-cv-01568-F, 2011 WL 3585983, at *4, *9 (N.D. Tex. Aug. 4, 2011) (awarding 25% of a $80 million settlement fund with a 1.97 multiplier); *Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 678-81 (N.D. Tex. 2010) (awarding 30% of a settlement between $90 and $110 million with a multiplier of approximately 2.5).[5]   In sum, the percentage requested is reasonable.

---

[5] The requested fee is also well within the range of percentage fees that have been granted in comparable securities class actions in other Circuits.  *See, e.g.*, *City of Providence v. Aeropostale, Inc.*, No. 11 Civ. 7132, 2014 WL 1883494, at *12 (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015) (awarding 33% of $15 million settlement); *City of Pontiac Gen. Emps.' Ret. Sys. v. Lockheed Martin Corp.*, 954 F. Supp. 2d 276, 281 (S.D.N.Y. 2013) (awarding 25% of $19.5 million settlement and noting that 25% is an "increasingly used benchmark"); *Taft v. Ackermans*, No. 02 Civ. 7951, 2007 WL 414493, at *10-11 (S.D.N.Y. Jan. 31, 2007) (awarding 30% of $15.2 million settlement); *In re Friedman's, Inc. Sec. Litig.*, No. 1:03-cv-3475, 2009 WL 1456698, at *2-4 (N.D. Ga. May 22, 2009) (awarding

**B.      The Requested Attorneys' Fees Are Reasonable Under the Lodestar Method**

Under Fifth Circuit law, if the Court determines the attorneys' fees based on the percentage method, the Court must "cross-check" the proposed fee for reasonableness by considering counsel's lodestar and the other considerations set out in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974) ("*Johnson*").  *See Dell*, 669 F.3d at 642-44.  The Court may also determine the reasonable attorneys' fees in the first instance by using the lodestar method, as long as the *Johnson* factors are also considered.  *See id.* at 644.  In this case, the lodestar method – whether used directly or as a "cross-check" on the percentage method – strongly demonstrates the reasonableness of the requested fee.

As the Court is aware, under the lodestar method, "the court computes fees by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate and, in its discretion, applying an upward or downward multiplier." *Id.* at 642-43.  In securities class actions, fees representing multiples above the lodestar are typically awarded to reflect contingency fee risks and other relevant factors.  Here, counsel is asking for no multiplier.

Here, Plaintiffs' Counsel spent a total of 19,573.70 hours of attorney and other professional support time prosecuting this Action.[6]  *See* ¶ 103.  Based on Plaintiffs Counsel's current hourly rates, their total lodestar is $9,166,598.75.[7]  *See id.*  This lodestar is a function of

---

30% of $14.9 million settlement); *Stahl v. MasTec, Inc.*, No. 8:05-CV-1265, 2008 WL 2267469, at *2 (M.D. Fla. May 20, 2008) (awarding 27.9% of $13.1 million settlement).

[6] As set forth in their firm declarations (Exhibits 4 and 5 to the Joint Declaration), Class Counsel have included time from September 9, 2014 (the date of entry of the Order appointing them as Co-Lead Counsel) through and including January 23, 2017 (the date when the agreement in principle to settle the Action was reached).

[7] The Supreme Court and courts in this Circuit have approved the use of current hourly rates to calculate the base lodestar figure as a means of compensating for the delay in receiving

the vigorous prosecution of the case, which included class certification, and the extensive efforts undertaken during fact discovery both within the United States and Canada.  The requested 25% fee, which amounts to $2,625,000 (before interest), therefore represents a fractional or "negative" multiplier of approximately 0.29 on Plaintiffs' Counsel's total lodestar – that is, less than the value of the time incurred by Plaintiffs' Counsel in the prosecution and resolution of this litigation.  Given that lodestar multipliers between 2 and 4.5 are commonly awarded in complex class actions with substantial contingency risks, the negative multiplier of approximately 0.29 requested here strongly confirms the reasonableness of the requested fee.  *See, e.g.*, *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 333 (W.D. Tex. 2007) ("The average range of multipliers applied to other class actions has been from 1.0 to 4.5.  The range of multipliers on large and complicated class actions have ranged from at least 2.26 to 4.5.") (citation omitted); *Klein*, 705 F. Supp. 2d at 680 (awarding fee representing a 2.5 multiplier and noting that "[m]ultipliers in this range are not uncommon in class action settlements" and that the 2.5 multiplier was warranted "due to the risks entailed in this lawsuit and the zealous efforts of the attorneys that resulted in a significant recovery for the class").

Courts have noted that a percentage fee that falls below counsel's lodestar strongly supports the reasonableness of the award.  *See, e.g.*, *Flag Telecom*, 2010 WL 4537550, at \*26 ("Lead Counsel's request for a percentage fee representing a significant discount from their lodestar provides additional support for the reasonableness of the fee request.").

---

payment.  *See Missouri v. Jenkins*, 491 U.S. 274, 284 (1989); *Leroy v. City of Houston*, 831 F.2d 576, 584 (5th Cir. 1987) ("current rates may be used to compensate for inflation and delays in payment"); *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 586 F. Supp. 2d 732, 763 (S.D. Tex. 2008) ("One accepted method of compensating for a long delay in paying for attorneys' services is to use their current billing rates in calculating the lodestar").

The hourly rates, which are Plaintiffs' Counsel's current rates and have been accepted by numerous courts in other securities and shareholder litigation, are reasonable in light of prevailing market rates for lawyers with comparable levels of experience and expertise in securities litigation and other complex class action litigation.  *See In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1087-88 (S.D. Tex. 2012) (an attorneys' hourly rates should be judged in relation to "'prevailing market rates for lawyers with comparable experience and expertise' in complex class action litigation," and "[a]n attorney's requested hourly rate is prima facie reasonable when he requests that the lodestar be computed at his or her customary billing rate, the rate is within the range of prevailing market rates[,] and the rate is not contested").  Class Counsel's blended rates here are $476 for attorneys, and $345 for staff, which are reasonable.  *See, e.g., Billitteri*, 2011 WL 3585983, at *9 ("the Court considers an hourly rate of $487.63 to be reasonable for purposes of the lodestar calculation"); *Klein*, 705 F. Supp. 2d at 680 (approving use of $500 average hourly rate for calculating lodestar).

In sum, whether calculated as a percentage of the fund or under the lodestar method, the requested fee is within the range of fees awarded by courts in securities class actions. Additionally, as set forth below, a review of the factors established by the Fifth Circuit in *Johnson* further demonstrates that the requested fee would be fair and reasonable.

## III.    OTHER FACTORS CONSIDERED BY COURTS IN THE FIFTH CIRCUIT CONFIRM THAT THE REQUESTED FEE IS FAIR AND REASONABLE

The Fifth Circuit has set forth the following criteria that courts should consider when reviewing a request for attorneys' fees in a common fund case:

(1) The time and labor required…[;] (2) The novelty and difficulty of the questions…[;] (3) The skill requisite to perform the legal service properly…[;] (4) The preclusion of other employment by the attorney due to acceptance of the

case…[;]  (5)  The  customary  fee…[;]  (6)  Whether  the  fee  is  fixed  or contingent…[;]  (7)  Time  limitations  imposed  by  the  client  or  the circumstances…[;] (8) The amount involved and the results obtained…[;] (9) The experience, reputation, and ability of the attorneys…[;] (10) The "undesirability" of the case…[;] (11) The nature and length of the professional relationship with the client…[; and] (12) Awards in similar cases.[8]

*Johnson*, 488 F.2d at 717-19; *see also Dell*, 669 F.3d at 642 n.25 (reiterating *Johnson* factors);

*Billitteri*, 2011 WL 3585983, at *3 (same).  In addition, Courts may consider additional factors,

such as (1) public policy considerations, (2) the Class Representatives' approval of the fee, and

(3) the reaction of the class.  Consideration of all of these factors provides further confirmation

that the fee requested here is reasonable.

### A.      The *Johnson* Factors Confirm that the Requested Fee Is Fair and Reasonable

Under  either  the  percentage  or  lodestar  method,  the  *Johnson*  factors  confirm  that  the

requested that the requested fee awarded is reasonable.  *See Dell*, 669 F.3d at 643-44.

### 1.      The Time and Labor Required

The time and effort expended by Class Counsel in prosecuting this Action and achieving

the Settlement establishes that the requested fee is justified.  The Joint Declaration details the

substantial efforts of Class Counsel to prosecute the Class Representatives' claims over nearly

three years of litigation.  As set forth in greater detail in the Joint Declaration, Class Counsel:

- conducted an extensive factual investigation, which included a thorough review of publicly  available  information  from  sources  such  as  SEC  filings  and  public

---

[8] Two of the *Johnson* factors – the "time limitations imposed by the client or the circumstances" and the "nature and length of [counsel's] professional relationship with the client" are not relevant in this case.  *See Klein*, 705 F. Supp. 2d at 676 ("not every factor need be necessarily considered"); *Schwartz*, 2005 WL 3148350, at *28 ("The relevance of each of the *Johnson* factors will vary in any particular case, and, rather than requiring a rigid application of each factor, the Fifth Circuit has left it to the lower court's discretion to apply those factors in view of the circumstances of a particular case.").

reports and news articles concerning the SEC's ongoing investigation of KBR relating to the alleged wrongful conduct; interviews with numerous former KBR employees and other individuals with relevant knowledge; and consultation with experts (¶¶ 13-14, 53-54);

- drafted and filed a detailed Consolidated Class Action Complaint (¶¶ 13-20);

- successfully moved for class certification (¶¶ 29-34);

- conducted two rounds of detailed briefing on Defendants' motion to dismiss  and argued against the motion (¶¶ 21-28);

- engaged in extensive fact discovery, including Class Counsel's analysis of approximately 1.3 million pages of documents produced by Defendants and approximately 78,000 pages of documents produced by non-party KPMG (¶¶ 35-44, 50-54);

- took seven depositions of KBR representatives (including 3 in Canada pursuant to letters rogatory), and defended three depositions, including those of the Class Representatives and their market efficiency expert (¶¶ 45-49); and

- drafted mediation statements and engaged in extensive mediation efforts with former Judge Daniel Weinstein and Jed Melnick (¶¶ 55-56).

As noted above, Plaintiffs' Counsel expended more than 19,573.70 hours investigating, prosecuting and resolving this Action with a total lodestar value of more than $9,166,598.75. The substantial time and effort devoted to this case by Plaintiffs' Counsel, and their efficient and effective management of the litigation, was critical in obtaining the favorable result achieved by the Settlement, and this factor supports the fee request.

## 2.    The Novelty and Difficulty of the Issues

Courts have long recognized that securities class actions are generally complex and difficult and that "Fifth Circuit decisions on causation, pleading and proof at the class certification stage make PSLRA claims particularly difficult."  *OCA*, 2009 WL 512081, at *21. As discussed above, this case involved complex questions and was vigorously defended.  In particular, there were many difficult and fact-intensive questions presented in the litigation,

including establishing the falsity of Defendants' statements and proving *scienter*.  Furthermore, even if the Class Representatives were successful in proving liability at trial, Defendants were prepared to argue that damages were minimal.  ¶¶ 77-84.

The significant risks to liability and damages are detailed in the Joint Declaration at ¶¶ 65-85 and set forth in the Class Representatives' brief in support of their motion for final approval of the Settlement, so they will not be repeated at length here.  In summary, Defendants had numerous strong defenses to scienter, including that: (i) the Restatement was the result of mistaken and subjective judgments made in the complex cost forecasting process for the Contracts; (ii) the Individual Defendants were not aware that KBR's financial statements were incorrect when issued because the Contracts were accounted for and performed in Canada, thousands of miles away from Houston, and none of the Individual Defendants was responsible for preparing or reviewing the cost estimates at issue here; (iii) as soon as Defendants became aware of a potential error in the cost forecasts they launched an investigation of the problem, hired independent legal counsel and accounting advisors to assist in that investigation, made public disclosure of the problem, and voluntarily restated the erroneous financial statements, conduct which is at odds with fraudulent intent; (iv) Defendants followed industry practice in estimating the costs to complete the Contracts, and those estimates ultimately proved incorrect only when the Company received the "issued for construction drawings," which showed, for the first time, that the work needed to complete the modules was more complex and costly than previously understood; (v) KBR's auditor certified and signed-off on its 2013 financial statements, indicating that the cost forecasts for the Contracts were the product of reasonable assessments at that time; (vi) KBR purchased more than $90 million of its own stock in the open

14

market during the Class Period and KBR's Board authorized KBR to repurchase $350 million worth of stock, which they would not have done if they knew the stock price was artificially inflated; and (vii) there was no suspicious insider selling by any Defendant.  ¶¶ 65-72.

Defendants also had significant defenses with respect to the element of falsity.  They would have argued that: (i) the statements that they made on conference calls regarding KBR's Canadian operations were too vague and general to support a claim for fraud, and did not specifically reference the cost forecasting for any of the Contracts at issue; and (ii) the May 5, 2014 statement disclosing the need to restate and the statements made on June 19, 2014 contained no false or misleading information.  ¶¶ 75-76.  Had Defendants' liability arguments been accepted, the Class would have recovered nothing.

Even if Plaintiffs defeated all those arguments and established liability, they faced extremely substantial hurdles in establishing damages.  With respect to damages, Defendants would have contended that: (i) no damages were recoverable for three of the four corrective disclosures at issue in this case; and (ii) any remaining damages had to be significantly reduced by disaggregating the impact of any "confounding" non-fraud related information disclosed to the market, netting gains realized by Class Members through the sale of their stock at artificially inflated prices during the Class Period, reducing the trading volume to remove market-making activity, and other adjustments to the Class Period and damages model.  ¶¶ 77-84.  Had these damages arguments been accepted, Plaintiffs' damages expert estimates that Class-wide damages would have been reduced to no more than approximately $21 million to $25 million.

Accordingly, the difficult challenges presented by this case fully support the award of the fee requested.

15

### 3.   The Skill Required to Perform the Legal Services Properly, and the Experience, Reputation and Ability of the Attorneys

Under these two *Johnson* factors, the Court should consider the skills required to litigate the Action and "the experience, reputation and ability of the attorneys" involved.   Considerable litigation skills were required in order for Class Counsel to achieve the Settlement in this Action. As noted above, this is a complex case involving difficult factual and legal issues on the merits, and it was subjected to an extremely rigorous defense.   Given the many contested issues, it took highly skilled counsel to represent the class and bring about the substantial recovery that has been obtained for the benefit of the Class.

As demonstrated by their respective firm resumes (attached as Exhibits C to Exhibits 4 – 5 to the Joint Declaration), BLBG and Labaton are among the nation's leading securities class action firms.   Class Counsel submit that the skill of their attorneys, the quality of their efforts in the litigation, their substantial experience in securities class actions, and their commitment to the litigation were key elements in enabling Class Counsel to negotiate this Settlement.

Courts have also recognized that the quality of the opposition faced by plaintiffs' counsel should also be taken into consideration in assessing the quality of counsel's performance.   Here, Defendants were represented by Vinson & Elkins LLP, a prestigious and experienced defense firm, which vigorously and ably defended the Action for nearly three years.   Notwithstanding this formidable opposition, Class Counsel achieved a favorable settlement.   *See, e.g.*, *DeHoyos*, 240 F.R.D. at 326 ("The quality of class counsel's work on this case was excellent and is ultimately reflected in the result which was obtained with a formidable opponent."); *Schwartz*, 2005 WL 3148350, at *30 ("The ability of plaintiffs' counsel to obtain such a favorable

settlement for the Class in the face of such formidable legal opposition confirms the superior quality of their representation").

### 4.      The Preclusion of Other Employment

The considerable amount of time that Plaintiffs' Counsel spent prosecuting the Action was time that they could not spend pursuing other matters.  Plaintiffs' Counsel dedicated this time and effort to the Action despite the very significant risks of no recovery and while deferring any payment of their fees and expenses until a settlement was reached.  This factor also supports the requested fee.  *See, e.g.*, *Burford*, 2012 WL 5471985, at *3; *Shaw*, 91 F. Supp. 2d at 970.

### 5.      The Customary Fee and Awards in Similar Cases

As noted above, the fee requested by Class Counsel is well within the range awarded in similar cases.  *See* Section II above.

### 6.      The Contingent Nature of the Fee

The fully contingent nature of the fee requested by Class Counsel and the substantial risks posed by the litigation are also important factors supporting the requested fee.  "No one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success."  *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 470 (2d Cir. 1974).

As noted above and in the Joint Declaration, Class Counsel faced very significant challenges to establishing liability and damages in this Action.  Defendants vigorously contested the elements of *scienter*, falsity, loss causation and damages and would have continued to do so through summary judgment, trial, and any appeals.

In the face of these very real uncertainties regarding the outcome of the case, Class Counsel prosecuted this Action on a wholly contingent basis, knowing that the litigation could last for years and would require devotion of a substantial amount of attorney time and a significant advance of litigation expenses with no guarantee of compensation. Class Counsel's assumption of this contingency fee risk, and its extensive litigation of the Action in the face of these risks, strongly supports the reasonableness of the requested fee. *See Billitteri*, 2011 WL 3585983, at *7 (the contingent nature of counsel's fee was "particularly relevant considering the difficulty presented by the facts and legal questions in this case and the very real risk of obtaining no recovery at all"); *Klein*, 705 F. Supp. 2d at 678 (where "class counsel represented the class on a contingent-fee basis, with no guarantee of any recovery . . . [t]he contingent nature of the fee favors an increase" in the fee); *OCA*, 2009 WL 512081, at *22 (where counsel faced challenges in establishing *scienter* and loss causation and in proving liability and damages at trial, "the risk plaintiffs' counsel undertook in litigating this case on a contingency basis must be considered in its award of attorneys' fees, and thus an upward adjustment is warranted").

### 7.     The Amount Involved and the Results Achieved

Another *Johnson* factor is the "overall degree of success achieved." *Roussel v. Brinker Int'l, Inc.*, No. H-05-3733, 2010 WL 1881898, at *3 (S.D. Tex. Jan. 13, 2010), *aff'd,* 441 F. App'x 222 (5th Cir. 2011). Here, Class Counsel has achieved a substantial recovery of $10.5 million for the benefit of the Class, which represents a significant portion of likely recoverable damages. ¶ 84. The Settlement is all cash, and members of the Class will now receive compensation that was otherwise uncertain – indeed, unlikely – when the case began. The result achieved, in light of the substantial risks, is significant and supports the requested fee.

### 8.     The Undesirability of the Case

In certain instances, the "undesirability" of a case can be a factor in justifying the award of a requested fee.  While Class Counsel did not consider this case to be "undesirable," there were substantial risks in financing and prosecuting this case, and Class Counsel knew that they would have to spend substantial time and money and face significant risks without any assurance of being compensated for their efforts.  Thus, the "undesirability" of the case also weighs in favor of the requested fee.  *See, e.g.*, *Billitteri*, 2011 WL 3585983, at *8 (where a case "raised particularly difficult issues," including the risk of "no recovery whatsoever," this factor supported an increase in the fee); *Braud v. Transport Serv. Co. of Ill.*, No. 05-1898, 2010 WL 3283398, at *13 (E.D. La. Aug. 17, 2010) (given the "risk of non-recovery" and the burdens of "undertaking expensive litigation against . . . well-financed corporate defendants on a contingent fee," the Court found that "undesirability in this case warrants an increase in the fee award").

### B.     Other Factors Considered by the Courts<br>Further Support the Requested Fee as Fair and Reasonable

In addition to the *Johnson* factors, Courts may consider certain other factors in determining the appropriate fee in a class action case.  *See Camden I Condo. Ass'n v. Dunkle*, 946 F.2d 768, 775 (11th Cir. 1991).

### 1.     Public Policy Considerations Support the Requested Fee

A strong public policy concern exists for rewarding firms for bringing successful securities litigation.  The Supreme Court has emphasized that private securities actions such as this provide "'a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [SEC] action.'"  *Bateman*, 472 U.S. at 310 (citation omitted); *see also Tellabs*, 551 U.S. at 313.  Accordingly, public policy favors granting Class Counsel's requested

fee and expense application here.  *See Jenkins*, 300 F.R.D. at 309 ("Public policy concerns—in particular, ensuring the continued availability of experienced and capable counsel to represent classes of injured plaintiffs holding small individual claims—support the requested fee."); *Flag Telecom*, 2010 WL 4537550, at *29 (if the "important public policy [of enforcing the securities laws] is to be carried out, the courts should award fees which will adequately compensate Lead Counsel for the value of their efforts, taking into account the enormous risks they undertook").

### 2.      The Requested Fee Has Been Approved by the Class Representatives

Class Representatives – APERS and IBEW Local No. 58 – are both sophisticated institutional investors who were appointed pursuant to the PSLRA.  As set forth in the Class Representatives' respective declarations, the Class Representatives oversaw the prosecution and resolution of this Action, and had a sound basis for assessing the reasonableness of the fee request.  *See* Stone Decl. ¶¶ 3-4; Young Decl. ¶¶ 3-4.  Each of the Class Representatives fully supports and approves the fee request.  *See* Stone Decl. ¶¶ 7-8; Young Decl. ¶¶ 7-8.

The PSLRA was intended to encourage institutional investors like the Class Representatives to assume control of securities class actions in order to "increase the likelihood that parties with significant holdings in issuers, whose interests are more strongly aligned with the class of shareholders, will participate in the litigation and exercise control over the selection and actions of plaintiff's counsel." H.R. Conf. Rep. No. 104-369 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 731 (1995).  Congress believed that these institutions would be in the best position to monitor the prosecution and to assess the reasonableness of counsel's fee requests. Accordingly, the Class Representatives' endorsement of the fee request in this PSLRA action supports its approval.  *See, e.g., In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL

01695(CM), 2007 WL 4115808, at *8 (S.D.N.Y. Nov. 7, 2007) ("public policy considerations support the award in this case because the Lead Plaintiff . . . – a large public pension fund – conscientiously supervised the work of lead counsel and has approved the fee request"); *In re Lucent Techs., Inc. Sec. Litig.*, 327 F. Supp. 2d 426, 442 (D.N.J. 2004) ("[s]ignificantly, the Lead Plaintiffs, both of whom are institutional investors with great financial stakes in the outcome of the litigation, have reviewed and approved Lead Counsel's fees and expenses request").

### 3.     The Reaction of the Class to Date Supports the Requested Fee

The reaction of the Class to date also supports the requested fee.  As of  June 19, 2017, the Claims Administrator has disseminated the Notice to more than 58,000 potential Class Members and nominees informing them of, among other things, Class Counsel's intention to apply to the Court for an award of attorneys' fees of 25% of the Settlement Fund and payment of up to $995,000 in expenses.  *See* Exhibit 3-A ¶ 8.  While the time to object to the fee and expense application does not expire until July 4, 2017, to date, no objections have been received. ¶ 131.  Class Counsel will address any future objections in their reply papers to be filed with the Court on July 18, 2017.

## IV.     THE REQUESTED EXPENSES ARE REASONABLE AND WERE NECESSARY TO ACHIEVE THE BENEFIT OBTAINED

Class Counsel's fee application includes a request for payment of Plaintiffs' Counsel's litigation expenses that were reasonably incurred and necessary to the prosecution of this Action. These expenses are properly recovered by counsel.  *See Billitteri*, 2011 WL 3585983, at *10 ("Expenses and administrative costs expended by class counsel are recoverable from a common fund in a class action settlement.") (citation omitted).  As set forth in the Joint Declaration,

Plaintiffs' Counsel incurred $816,260.97 in litigation expenses on behalf of the Class in the prosecution of the Action.  ¶¶ 119-127.

The largest component of expenses related to experts.  Specifically, $406,305.43, or approximately 50%, was expended on experts and consultants.  ¶ 122.  Class Counsel retained accounting and damages experts to assist in the prosecution and resolution of the Action.  Class Counsel's main loss causation and damages expert assisted them during the preparation of the Complaint, during the mediation and settlement negotiations with the Defendants, and assisted Class Counsel with the development of the proposed Plan of Allocation.  Class Counsel also consulted with industry experts on issues pertaining to pipe fabrication and modular assembly.

Another large component of the litigation expenses was for litigation support services, which were needed to host the electronic documents produced by Defendants and KPMG and to produce Class Representatives' records to Defendants.  These charges amounted to $108,584.50.  ¶ 123.  The Class's portion of mediation costs totaled $50,812.61.  ¶ 125.  Class Counsel also required Canadian counsel to assist with discovery efforts in Canada, which totaled $39,379.28.  ¶ 124.

The other expenses for which Class Counsel seeks payment are the types of expenses that are necessarily incurred in litigation and routinely charged to clients billed by the hour.  These expenses include, among others, electronic research, court reporting fees, work-related transportation, out-of-town travel, and copying costs.  *See generally*, Exhibits 4-B to 6-B.  The foregoing expense items are not duplicated in the firms' hourly rates.

The Notice informed potential Class Members that Class Counsel would apply for payment of litigation expenses in an amount not to exceed $995,000.  The total amount of

expenses requested, $816,260.97, is below the amount listed in the Notice and, to date, there has been no objection to the request for expenses.

## V.      CLASS REPRESENTATIVES SHOULD BE AWARDED THEIR REASONABLE COSTS AND EXPENSES UNDER 15 U.S.C. §78-U-4(A)(4)

Lastly, in connection with their request for payment of Litigation Expenses, Class Counsel also seek reimbursement of $7,113.64 in costs and expenses incurred directly by the Class Representatives relating to their representation of the Class.   The PSLRA specifically provides that an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class" may be made to "any representative party serving on behalf of a class."   15 U.S.C. §78u-4(a)(4).   Here, the Class Representatives seek awards for time dedicated by their employees in furthering and supervising the Action.   Specifically, APERS seeks reimbursement of $1,118.64 in expenses and IBEW Local No. 58 seeks reimbursement of $5,995.00 in expenses.   *See* Stone Decl. ¶¶ 9-11; Young Decl. ¶¶ 9-11.

Class Representatives APERS and IBEW Local No. 58 each took active roles in the litigation and have been fully committed to pursuing the Class's claims since they became involved in the litigation.   For instance, the Class Representatives engaged in time-consuming discovery efforts to search for and gather internal documents responsive to Defendants' discovery requests.   In addition, the Class Representatives prepared for, traveled to and testified at depositions in connection with the class certification motion.   Stone Decl. ¶ 4; Young Decl. ¶ 4.   These efforts required employees of the Class Representatives to dedicate considerable time and resources to the Action that they would have otherwise devoted to their regular duties.   The requested reimbursement amounts are based on the hours that the Class Representatives' employees committed to these activities.   *See* Stone Decl. ¶¶ 10-11; Young Decl. ¶ 11.

Numerous courts have approved reasonable awards to compensate lead plaintiffs for the time and effort they spent on behalf of a class. In *In re Marsh & McLennan Companies Securities Litigation*, No. 04 Civ. 8144 (CM), 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009), the court awarded $144,657 to the New Jersey Attorney General's Office and $70,000 to certain Ohio pension funds, to compensate them "for their reasonable costs and expenses incurred in managing this litigation and representing the Class." *Id.* at *21. As the court noted, their efforts were "precisely the types of activities that support awarding reimbursement of expenses to class representatives." *Id.*; *see also In re Tetra Techs., Inc. Sec. Litig.*, No. 4:08-CV-00965 (S.D. Tex. Sept. 29, 2010) (Ellison, J.) (awarding lead plaintiff $3,640.20 for reimbursement of reasonable costs and expenses directly related to representation of the class under the PSLRA) (Exhibit 8);[9] *Simons v. Dynacq Healthcare, Inc.*, No. H-03-5825 (S.D. Tex. Jan. 10, 2007) (Ellison, J.) (awarding 2 lead plaintiffs an aggregate amount of $7,077 as reimbursement for reasonable costs and expenses (including lost wages) directly related to their representation of the class) (Exhibit 8); *In re Seitel, Inc. Sec. Litig.*, No. 02-1566 (S.D. Tex. July 29, 2005) (Werlein, J.) (awarding lead plaintiff $3,000 as reimbursement for reasonable costs and expenses (including lost wages), directly relating to his representation of the class pursuant to the PSLRA) (Exhibit 8).

The awards sought by Class Representatives are reasonable and justified under the PSLRA based on their involvement in the Action from inception to settlement, and should be granted.

---

[9] Exhibit 8 is a compendium of the unreported cases cited herein.

## CONCLUSION

For the foregoing reasons, Class Counsel respectfully request that the Court award (i) attorneys' fees in the amount of 25% of the Settlement Fund, or $2,625,000 plus interest incurred at the same rate as the Settlement Fund; and (ii) payment of litigation expenses totaling $823,374.61, including payment of Plaintiffs' Counsel's expenses in the amount of $816,260.97 and reimbursement of $7,113.64 to the Class Representatives for their costs and expenses directly related to their representation of the Class.  Class Counsel respectfully requests that 50% of the attorneys' fees awarded and 100% of the approved expenses be payable immediately upon the Court's approval of the fees and expenses, with the balance of the attorneys' fees to be payable when settlement distribution checks have been mailed to Authorized Claimants.[10]

Dated: June 20, 2017                                    Respectfully submitted,

**LABATON SUCHAROW LLP**                  **BERNSTEIN LITOWITZ BERGER**
                                                         **& GROSSMANN LLP**

/s/ Louis Gottlieb
Louis Gottlieb (*pro hac vice*)                  /s/ John Rizio-Hamilton
140 Broadway                                    John Rizio-Hamilton (*pro hac vice*)
New York, NY 10005                              1251 Avenue of the Americas
Telephone: (212) 907-0700                       New York, NY 10020
Facsimile: (212) 818-0477                       Telephone: (212) 554-1400
Email: lgottlieb@labaton.com                    Facsimile: (212) 554-1444
                                                Email: johnr@blbglaw.com

*Class Counsel for Class Representatives and the Class*

By:  *s/ Thomas R. Ajamie*
Thomas R. Ajamie
(Texas Bar No. 00952400)

---

[10] A proposed order will be submitted with Class Counsel's reply papers, after the deadline for objecting has passed.

**AJAMIE LLP**
Penzoil Place – South Tower
711 Louisiana, Suite 2150
Houston, TX 77002
Telephone: (713) 860-1600
Facsimile: (713) 860-1699
Email: tajamie@ajamie.com

*Liaison Counsel*

### CERTIFICATE OF SERVICE

I certify that on this 20th day of June 2017, I caused the foregoing to be electronically filed with Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List.

By: */s/ Louis Gottlieb*